# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ALMA AVALOS,** Special Administrator of the Estate of Juan Avalos, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **PULTE HOME CORPORATION,** a Foreign Corporation, and **PULTE HOME INC.,** a Foreign Corporation, | ) ) ) | Case No. 04 C 7092 |
| Defendants/Third-Party Plaintiffs, | ) ) ) | Magistrate Judge Martin C. Ashman |
| v. | ) ) | |
| **F.E. WHEATON & CO., INC.,** and **JOSE AVALOS,** individually, | ) ) ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before this Court on the motions of Third-Party Defendant, F.E. Wheaton & Co., Inc. ("Wheaton"), for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), and for summary judgment under Federal Rule of Civil Procedure 56(b) ("Rule 56(b)"). The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow, the Court denies both of Wheaton's motions.

# I. **Background**

On February 11, 2004, Juan Avalos, a Wheaton employee, was injured while delivering

building materials to Auburn Lakes, a Pulte Home Corporation ("Pulte") housing development.

(Pulte 12(c) Resp. at 1.) Wheaton had contracted with Pulte to bring the building materials to the

Auburn Lakes project. (*Id.*) After Juan Avalos died from his injuries, his wife, Alma Avalos,

then instituted this action against Pulte to recover for the wrongful death of her late husband.

(Wheaton 56(b) Mem. at 2.) Alma Avalos alleges that Pulte was negligent in failing to supervise

properly, and that Pulte's negligence caused the injury that resulted in Juan Avalos's death. (*Id.*;

Pulte Compl. ¶ 6.) Pulte filed a third-party complaint against Juan Avalos's employer, Wheaton.

This motion involves only Pulte's third-party complaint against Wheaton. Count II of

Pulte's complaint alleges that Wheaton breached the contract between Pulte and Wheaton for

Wheaton's delivery of building materials to Auburn Lakes. (Pulte Compl. ¶¶ 15-23.) The bases

for Pulte's breach of contract claim are two-fold, centering on two provisions in one paragraph of

the contract. First, one provision in ¶ 4 of the contract (the "indemnity clause") provides as

follows:

> To the full extent permitted by law, [Wheaton] hereby agrees to save, indemnify
> and keep harmless [Pulte] and its agents and employees against: all liability,
> claims, judgements [sic], suits or demands for damages to persons or property
> arising out of, resulting from, or relating to [Wheaton's] performance of the work
> under this Agreement ("Claims") unless such Claims have been specifically
> determined by the trier of fact to be the sole negligence of Pulte. [Wheaton's] duty
> to indemnify Pulte shall arise at the time written notice of a Claim is provided to
> Pulte regardless of whether claimant has filed suit on the Claim. [Wheaton's] duty
> to indemnify Pulte shall arise even if Pulte is the only party sued by claimant
> and/or claimant alleges Pulte's negligence was the sole cause of claimant's
> damages. [Wheaton's] indemnification obligation shall include, but not be limited
> to, any Claim made against Pulte by: (1) a [Wheaton] employee subcontractor
> who has been injured on property owned by Pulte. . . .

(Pulte 12(c) Resp. Ex. 1, ¶ 4.) Based on this provision, Pulte's third-party complaint alleges that Wheaton has breached the contract by failing to defend and indemnity Pulte in this suit. (Wheaton 12(c) Mem. at 2; Pulte Compl. ¶¶ 16-18.)

The second basis for Pulte's breach of contract claim is founded on a different provision in of ¶ 4 of the contract (the "insurance clause"). The insurance clause provides the following:

> [Wheaton] shall add Pulte as an Additional Insured on the general liability policy or policies to the full extent of the actual limits of [Wheaton's] coverages even if such actual limits exceed the minimum limits required by this Agreement. Pulte's additional insured status under the policy(ies) must not be limited by any amendatory language to the policy.

(Pulte 12(c) Resp. Ex. 1, ¶ 4.) Based on this provision, Pulte's third-party complaint alleges that Wheaton has breached its obligation to add Pulte as an additional insured on Wheaton's commercial general liability policy ("CGL"). Pulte's complaint states that Pulte tendered its defense of Avalos's claims to Wheaton's insurers but was rejected. (Pulte Compl. ¶ 20.) Included in the filings was a certification of insurance that lists Pulte as an additional insured on Wheaton's CGL. (Pulte 12(c) Resp. Ex. 2.)

In response to these claims, Wheaton seeks a judgment on the pleadings under Rule 12(c). Wheaton's arguments address both bases for Pulte's breach of contract claim. First, according to Wheaton, the indemnity clause is unenforceable under the Construction Contract Indemnification for Negligence Act ("Anti-Indemnity Act" or "Act"). Second, Wheaton argues that Pulte's third-party complaint makes clear that Wheaton has satisfied its contractual obligations to add Pulte as an additional insured under its CGL policy. (Wheaton 12(c) Mem. at 3.)

- 3 -

In addition to seeking judgment on the pleadings under Rule 12(c) on Pulte's count II, Wheaton also seeks a summary judgment on Pulte's count I in its amended complaint. Pulte's count I seeks contribution from Wheaton pursuant to the Joint Tortfeasor Contribution Act ("Contribution Act"). (Pulte Compl. ¶¶ 1-14.) Wheaton argues that its liability to its employees is limited by the Illinois Workers' Compensation Act ("IWCA") to the amount of its workers' compensation lien (the "lien" or "IWCA lien"). In its Local Rule 56.1 Statement of Material Facts, Wheaton waived its IWCA lien, and it argues that this waiver entitles it to a dismissal of Pulte's contribution claims against Wheaton. (Wheaton 56(b) Mem. at 2-3.) This Court addresses both of Wheaton's motions and denies both.

## II. Discussion

### A. Motion for Judgment on the Pleadings

#### 1. Standards and Governing Law

Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c); *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Under controlling case law, the applicable standard for a 12(c) motion on the pleadings is the same standard as that applicable for a motion to dismiss for failure to state a claim on which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6). *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003); *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452 & n.3. Thus, the Court will grant a 12(c) motion where "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452 (citing

- 4 -

*Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). "In evaluating the motion, [the Court] accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004) (quoting *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703, 709 (7th Cir. 2003)).

The basis for this Court's subject matter jurisdiction is diversity. In a diversity case, the Court must apply the choice-of-law rules of the state in which it sits in order to determine whose substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Thomas*, 381 F.3d at 704-05. The parties do not dispute that Illinois law applies. The Wheaton-Pulte contract contains a choice-of-law clause that indicates that Illinois law applies. Because the contract was to be performed in Illinois, Illinois's public policy is not offended. For these reasons, it is clear that Illinois law applies, and the Court need not engage in a lengthy choice-of-law analysis.

### 2. Indemnity

Wheaton argues that its obligation to indemnify Pulte under the indemnity clause is effectively void because the operation of the clause is barred by the Anti-Indemnity Act. This Act states,

> With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

740 Ill. Comp. Stat. 35/1. Essentially, this statute voids any construction contract's provision that purports to indemnify a party for that party's own negligence. Thus, two sub-issues emerge: first, whether the Pulte-Wheaton contract is a "construction contract" within the meaning of the Act; and second, if the contract is a construction contract, whether the purported indemnity provision violates the Act. Because the Court finds that the Wheaton-Pulte contract is not a construction contract within the meaning of the Anti-Indemnity Act, the Court does not reach the second issue.

With respect to the first sub-issue–whether the Wheaton-Pulte agreement is a construction contract–Wheaton argues that, because the contract involved delivering building materials to a home construction project, the contract falls within the "other work dealing with construction" portion of the Act's definition of contracts to which it applies. (Wheaton 12(c) Mem. at 5.) Wheaton attempts to strengthen its argument by stating that the Wheaton-Pulte contractual relationship is structured like typical construction subcontractor relationships, meaning that "standard construction industry practices governed the Pulte-Wheaton relationship." (Wheaton 12(c) Reply at 5.)

Both parties recognize that the contract does not qualify as a contract "for the construction, alteration[, or] repair" of a building, as Wheaton's primary duty under the contract is to make deliveries rather than to perform actual acts of construction. The issue revolves around whether the contract can fall within the catchall "other work" provision of the Act. In this regard, the Court finds the case *Winston Network, Inc. v. Indiana Harbor Belt Railroad* particularly helpful. 944 F.2d 1351 (7th Cir. 1991). In *Winston Harbor*, an advertising company entered into advertising contracts with various railroad companies. *Id.* at 1353-54. While

- 6 -

fulfilling its obligations under one of these contracts, the advertising company hired painters to paint an advertisement on a train viaduct. *Id.* at 1355. The painting company erected scaffolding in order to complete the project, and this scaffolding collapsed when hit by a defective train car, killing one of the painters and injuring another. *Id.* The contract between the railroad and the advertising company included a clause in which the advertising company agreed to indemnify the railroad for the railroad's negligence. *Id.* at 1354. Naturally, the advertising company (or, more accurately, the advertising company's insurer) argued that the contractual provision for indemnity was void under the Act. *Id.* at 1358. Focusing on the contract itself rather than on the actions of the painting company that caused the injury, the court stated that the "connection to construction (if painting an advertisement is, in fact, construction) is simply too attenuated." *Id.* at 1359. The court added, "The statute, after all, applies to contracts '*for* the construction, alteration, repair or maintenance' of a structure, not to contracts '*having some connection with* the construction, alteration, repair or maintenance' of a structure." *Id.* (emphasis in original).

In light of *Winston Network*, the Court employs a narrower interpretation of "other work" than what Wheaton propounds. This narrow interpretation directs the Court to find that the Wheaton-Pulte contract is not a "construction contract" within the meaning of the Act. As in *Winston Network*, the connection the Wheaton-Pulte contract has to construction is too attenuated. The contract provides for the delivery of materials to Pulte construction sites. While the types of materials Wheaton contracted to deliver were intended for and used in the construction of buildings, the Court would have to cast the "other work" net too broadly if the Act were to cover contracts like the Wheaton-Pulte contract. If Wheaton were not in the business of distributing lumber and millwork, but was instead a common carrier or postal service

- 7 -

delivering building materials to Auburn Lakes, the Act would apply to the contract under Wheaton's definition of "other work." The Court would be hard-pressed to find that a postal service delivering construction supplies or blueprints might fall within the purview of the Act. With this in mind, the Wheaton-Pulte contract is less akin to a construction contract than to a delivery contract. For this reason, the Court holds that the Wheaton-Pulte contract is not a "construction contract" within the meaning of the Act.

Because the Act does not apply to the Wheaton-Pulte contract, the Court must apply the common law to determine whether the indemnity provision applies. *See id.* at 1358-59. "Illinois courts will generally enforce contracts of indemnity against one's own negligence." *Id.* at 1359 (citing *Rutter v. Arlington Park Jockey Club*, 510 F.2d 1065, 1069 (7th Cir. 1975)). In order to indemnify against one's own negligence, the contractual language need not make specific reference to indemnification for another's negligence as long as the contractual language "clearly indicates that this was the intent of the parties." *Buenz v. Frontline Transp. Co.*, No. 1-05-2587, 2006 WL 2727428, at *3 (Ill. App. Ct. Sept. 25, 2006). *See also Washington Group Int'l Inc. v. Mason Mfg., Inc.*, 263 F. Supp. 2d 1115, 1118 (N.D. Ill. 2003).

Here, the contractual language explicitly states that Wheaton will indemnify Pulte in the event that a claimant–such as Avalos–brings suit against Pulte in connection with the Auburn Lakes project. Pulte and Wheaton cite a panoply of cases that demonstrate that contracts containing the word "indemnify" may be more appropriately construed as contracts for contribution, depending on the other contractual language and other circumstances. These cases all operate in the context of whether the Anti-Indemnity Act operates to void the contract. In light of the Court's conclusion that the Wheaton-Pulte contract is not a construction contract, the

Court need not determine whether the contract contemplates indemnification or merely contribution in the context of the Act. Wheaton's argument relies on the Act, and Wheaton does not cite any case showing that language similar to what is present in the Wheaton-Pulte contract would not indicate that the parties intended to indemnify. In the context of the common law, by the contract's language, the Court finds that the parties clearly intended for Wheaton to indemnify Pulte for Pulte's own negligence. Thus, the indemnity clause is not void as a matter of law, and Pulte can prove some set of facts that would support its claim for relief. For this reason, the Court denies Wheaton's motion for judgment on the pleadings on the basis of the indemnity clause and the Anti-Indemnity Act.

### 3. Insurance

As the second basis for Pulte's breach of contract claim, Count II of Pulte's amended complaint alleges that Wheaton has breached its obligation to "procure and keep in full force and effect specified liability insurance naming PULTE as additional insured." (Pulte Third-Party Compl. ¶ 19.) The insurance clause in the Wheaton-Pulte contract that requires Wheaton to add Pulte as a named insured is repeated above. In addition to the portion of the insurance clause repeated above, the insurance clause further provides that "[t]he amounts and types of insurance set forth above are minimums required by [Pulte] and shall not substitute for an independent determination by [Wheaton] of the amounts and types of insurance which [Wheaton] shall determine to be reasonably necessary to protect itself and its products." (Pulte 12(c) Resp. Ex. 1, ¶ 4.)

- 9 -

The parties agree that the insurance clause obligated Wheaton to "obtain CGL insurance for Pulte." (*See* Wheaton 12(c) Mem. at 8.) Wheaton states that it complied with this agreement by adding Pulte as an additional insured on its CGL policy with St. Paul Fire & Marine Insurance Company. (Wheaton 12(c) Mem. at 8-9.) In other words, Wheaton argues that the contract only obligated it to add Pulte as an additional insured, and the fact that the CGL coverage Wheaton acquired excluded coverage transpiring from automobile use–leaving Pulte without effective insurance coverage in this case–does not translate into a breach of the contract by Wheaton. (*See* Wheaton 12(c) Reply at 2.) Thus, the issue becomes whether the contract simply required Wheaton to add Pulte to its CGL policy, or whether the contract required more, namely, that Pulte actually have coverage in situations like the present case.

In construing contracts, the Court's primary goal is to give effect to the intent of the parties. *See, e.g., Schek v. Chicago Transit Auth.*, 247 N.E.2d 886, 888, 42 Ill. 2d 362, 364 (1969); *cf. Pekin Ins. Co. v. Miller*, 854 N.E.2d 693, 697 (Ill. App. Ct. 2006). The court, if possible, will infer the intent of the parties solely by looking to the contract itself, which must be read as a whole. *See O'Shield v. Lakeside Bank*, 781 N.E.2d 1114, 1119, 335 Ill. App. 3d 834, 839 (App. Ct. 2002). Thus, the Court looks to the various contract provisions in order to determine whether the parties intended for Wheaton to add Pulte to its CGL policy irrespective of what the CGL policy would cover, or whether they intended for Wheaton to procure coverage for accidents such as Avalos's.

Here, as discussed in the previous section, the Wheaton-Pulte contract contains the indemnity clause, which purports to require Wheaton to indemnify Pulte for a variety of claims (indeed, "all claims"). It then provides in the insurance clause–which immediately follows the

- 10 -

indemnity clause–that Wheaton will maintain CGL coverage "[i]n order to ensure fulfillment of the forgoing [sic] obligation," that is, the obligation to indemnify. (Pulte 12(c) Resp. Ex. 1, ¶ 4.) This insurance provision goes on to outline the insurance Wheaton must acquire in order to cover "Worker's Compensation" claims. (*Id.*) In this section, which purports to apply "[i]f materials are being off loaded at the site by [Wheaton]," the provision states, "The amounts and types of insurance set forth above are minimums required by the [Pulte] and shall not substitute for an independent determination by [Wheaton] of the amounts and types of insurance which [Wheaton] shall determine to be reasonably necessary to protect itself and its products." (*Id.*) Read together, these provisions make clear that the parties agreed that Wheaton would procure insurance coverage commensurate to cover–at a minimum–indemnification of claims against Pulte that relate to this contract. Particularly in light of the contract's language that the coverage specified is not a minimum and is not to be limited by "amendatory language to the policy," Pulte can prove facts that show that Wheaton breached its obligation to provide insurance. Thus, Wheaton's Rule 12(c) motion for judgment on the pleadings fails.

Wheaton cites a string of cases in support of its contention that it need only place Pulte's name on Wheaton's CGL policy. Wheaton quotes *Zettel v. Paschen Contractors, Inc.*, as saying that

> [u]nder an agreement to obtain insurance the promisor merely agrees to procure
> the insurance and pay the premium on it. Once the insurance is obtained, the
> promisor bears no responsibility in the event of injury or damage, even if the
> insurer should breach the insurance agreement through no fault of the promisor.

427 N.E.2d 189, 192, 100 Ill. App. 3d 614, 618 (App. Ct. 1981). This quotation does not apply to the present issue. The issue here is not the efficacy of the insurance Wheaton provided, as was

- 11 -

the issue in *Zettel*, but rather whether the insurance Wheaton provided meets the scope of the coverage the parties intended. Thus, while the Court agrees with the statement in *Zettel*, the Court does not find this statement controlling on the facts alleged.

Wheaton also cites *Tanns v. Ben A. Borenstein & Co.* for the proposition that "the contract [to obtain CGL coverage] is not breached merely because the CGL policy obtained contain[s] an exclusion that negates coverage for the promisee." (Wheaton 12(c) Mem. at 8 (citing *Tanns v. Ben A. Borenstein & Co.*, 688 N.E.2d 667, 293 Ill. App. 3d 582 (App. Ct. 1997)). In *Tanns*, the CGL coverage that the promisor obtained excluded coverage for claims arising from the promissee's own negligence. The *Tanns* court, in determining the contracting parties' intent as embodied by the contract, found that the parties did not intend for the promisor to "have a duty to have [the promissee] insured for injuries caused solely by [the promissee's] negligence." *Tanns*, 688 N.E.2d at 672, 293 Ill. App. 3d at 589. While *Tanns* involved a case where the contract was "not breached merely because the CGL policy obtained contained an exclusion that negates coverage for the promisee," (Wheaton 12(c) Mem. at 8), *Tanns* does not stand for the broad proposition that this must always be the case. Instead, the *Tanns* court determined the parties' intentions, and in light of the contract's provision that the insurer did not have to defend the promissee where the promissee was solely negligent, the parties did not intend for the CGL policy to provide coverage over claims where the promissee was solely negligent. *See Tanns*, 688 N.E.2d at 672-73, 293 Ill. App. 3d at 589-91. *See also Vaughn v. Commonwealth Edison Co.*, 632 N.E.2d 44, 45, 259 Ill. App. 3d 304, 305 (App. Ct. 1994) ("The contract provided in separate paragraphs that Hunter would indemnify Edison and also that Hunter wold obtain insurance for Edison. Even though the indemnity clause itself is void, its inclusion in the

- 12 -

contract is evidence of the parties' intent. Thus, viewing the contract as a whole, we cannot say that the parties intended to look solely to the insurance provided by Hunter and accept the decision of the insurer to cover the claim or not as binding upon both parties.").

Wheaton points to the Wheaton-Pulte agreement, which, like *Tanns*, provides that Wheaton is not required to indemnify Pulte against claims that "have been specifically determined by the trier of fact to be the sole negligence of Pulte." (Pulte 12(c) Resp. Ex. 1, ¶ 4.) However, the Wheaton-Pulte contract also provides that where a claimant, like Avalos, alleges that Pulte is solely or partially at fault, Wheaton has a duty to indemnify. (*Id.*) Because Wheaton has an obligation under the insurance clause to purchase insurance to cover such situations, this evidences an intent to obligate Wheaton to purchase broader insurance coverage than was required in *Tanns*. This difference is key in cases like the present one, where Pulte is not seeking indemnity for–or insurance coverage over–a claim in which Pulte is solely negligent. Pulte's complaint denies that Pulte is negligent and alleges that Wheaton is negligent. (Pulte Compl. ¶¶ 9-13.) It is possible for Pulte to prove facts such that Pulte and Wheaton were both negligent, or that Wheaton alone was negligent. The contract's terms indicate that Wheaton is to provide insurance coverage for such an event. A Rule 12(c) motion is granted where no set of facts can be proven in which the plaintiff can recover, and it is possible that some set of facts can be proven where the trier of fact finds that Pulte is not solely at fault in Avalos's injury and death. For this reason, Wheaton's motion for judgment on the pleadings is denied with respect to Pulte's claim that Wheaton breached its contractual duty to provide insurance coverage.

- 13 -

## B.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Sinkler v. Midwest Prop. Mgmt. Ltd.*, 209 F.3d 678, 683 (7th Cir. 2000). In determining whether summary judgment is appropriate, the Court views the evidence–and draws all reasonable inferences therefrom–in a light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992); *Guzman v. Sheahan*, No. 04 C 1814, 2006 WL 2583718, at *4 (N.D. Ill. Sept. 5, 2006).

As required by Local Rule 56.1, Wheaton has submitted its Statement of Material Facts, to which Pulte has substantially agreed.[1] Thus, there is no genuine issue of material fact, and the issue becomes whether Wheaton is entitled to judgment as a matter of law. Wheaton's legal argument is that, because it waived its lien under the IWCA, Wheaton is entitled to summary judgment and an effective dismissal of Pulte's contribution claims against it. (Wheaton 56(b) Mem. at 2-3.)

Wheaton's argument centers around application of the IWCA as interpreted by *Kotecki v. Cyclops Welding Corp.*, 583 N.E.2d 1023, 146 Ill. 2d 155 (1991). In *Kotecki*, the Illinois Supreme Court sought to balance the competing policies of the Contribution Act and the IWCA:

---

[1] Wheaton's 56.1 Statement listed four paragraphs. Although Pulte disputed Wheaton's conclusions intertwined in these facts and the relative import of the facts themselves, the parties agree on the facts as they actually happened.

- 14 -

"requiring that tortfeasors contribute in proportion to their fault in causing an injury," and limiting employers' liability in workers' compensation claims to the amount of the workers' compensation lien, respectively. *Id.* at 1027, 146 Ill. 2d at 164-65. In striking a balance, the court limited an employer's contribution amount to the employer's liability under the IWCA, i.e., the amount of the workers' compensation lien. *Id.* at 1028, 146 Ill. 2d at 165. In the wake of *Kotecki*, the Illinois Supreme court held in *Lannom v. Kosco* that if an employer waives its IWCA lien, the employer is entitled to dismissal of the third-party joint tortfeasor's contribution claim. 634 N.E.2d 1097, 158 Ill. 2d 535 (1994).

Although this framework may appear simple at first glance, several cases that followed *Lannom* have established and clarified methods by which an employer can waive by contract the *Kotecki* limit on liability. Following these cases, an employer can contractually agree to expose itself to full liability for its own negligence, notwithstanding the *Kotecki* limit. These cases' application here requires an in-depth analysis.

In *Braye v. Archer-Daniels-Midland Co.*, an employee sued his employer for injuries he sustained while working, and the employer filed a third-party complaint seeking contribution from the owner of the premises where the employee had been working. 676 N.E.2d 1295, 1297, 175 Ill. 2d 201, 203-04 (1997). The purchase agreement between the employer and the third party stated the following:

> If [the employer's] work under the order involves operations by [the employer] on the premises of [the third party] or one of its customers, [the employer] shall take all necessary precautions to prevent the occurrence of any injury to person or damage to property during the progress of such work and, except to the extent that any such injury or damage is due solely and directly to [the employer's] or its customers's negligence, as the case may be, [the employer] shall pay [the third

- 15 -

party] for all loss which may result in any way from any act or omission of [the employer], its agents, employees or subcontractors.

*Id.* at 1298, 175 Ill. 2d at 205. In holding that this provision waived the employer's *Kotecki* limit, the court stated that "neither the language of the Workers' Compensation Act nor public policy prohibits our determination that an employer may waive the protection of the Workers' Compensation Act." *Id.* at 1300, 175 Ill. 2d 210. Thus, the court left no doubt that the *Kotecki* cap may be waived.

Similarly, the case *Liccardi v. Stolt Terminals, Inc.*, addressed the issue whether an employer has contractually waived the *Kotecki* limit. 687 N.E.2d 968, 178 Ill. 2d 540 (1997). The provision at issue was as follows:

If Vendor performs services . . . hereunder, Vendor agrees to indemnify and hold harmless Stolt Terminals (Chicago) Inc. from all loss or the payment of all sums of money by reason of all accidents, injuries, or damages to persons or property that may happen or occur in connection therewith.

*Id.* at 972, 178 Ill. 2d at 548. The court held that this provision waived the Vendor's *Kotecki* limit. *Id.* at 971-73, 178 Ill. 2d at 546-50.

In both *Braye* and *Liccardi*, the primary issue regarding whether the contractual provision waived the *Kotecki* limit was whether the particular contract provision was valid. *See Braye*, 1302-04, 175 Ill. 2d at 213-18; *Liccardi*, 687 N.E.2d at 971-73, 178 Ill. 2d at 546-50. This analysis hinged on whether the respective provisions violated the Anti-Indemnity Act. Both *Braye* and *Liccardi* involved construction contracts, so there was no question that the Anti-Indemnity Act applied; the only question was whether the respective provisions operated as promises for indemnity or as promises for contribution, as the Act would invalidate the former but not the latter. In both *Braye* and *Liccardi*, the court found that the respective contractual

provisions promised contribution, not indemnity, meaning that they were valid and effectively waived the *Kotecki* limit. *See Braye*, 1302-04, 175 Ill. 2d at 213-18; *Liccardi*, 687 N.E.2d at 971-73, 178 Ill. 2d at 546-50.

Here, the Court holds that Wheaton has waived the *Kotecki* limit on its liability for workers' compensation claims relating to the Wheaton-Pulte contract. The provision, quoted above, states that Wheaton agrees to "save, indemnify, and keep harmless [Pulte] against[] all liability, claims, judgements [sic], suits or demands for damages." (Pulte 12(c) Resp. Ex. 1, ¶ 4.) This language—with words like "keep harmless . . . against all liability"—indicates that Wheaton, in the contract, is waiving any limit on liability it might implicitly have by virtue of the IWCA. In other words, Wheaton has "enter[ed] into an agreement prior to the commencement of litigation to assume full liability for damages commensurate with its relative degree of fault." *Braye*, 676 N.E.2d at 1299. Also, the contractual provisions in this case are valid. As discussed above in the context of Wheaton's motion for judgment on the pleadings, the Anti-Indemnity Act does not invalidate Wheaton's promise to indemnify. Regardless of whether the Wheaton-Pulte contract contains a promise to indemnify or a promise for contribution, the contractual provisions are valid. Therefore, Wheaton has waived its *Kotecki* limit on liability and is potentially liable for the full measure of its fault in Avalos's injury and subsequent death, the IWCA notwithstanding.

In its Reply, Wheaton cites a recent Illinois appellate court case, *Estate of Willis v. Kiferbaum Construction Corp.*, 830 N.E.2d 636, 357 Ill. App. 3d 1002 (App. Ct. 2005), which gives the Court pause before finding that Wheaton has waived the *Kotecki* limit. In *Willis*, two contractual provisions in separate contracts were at issue, and an issue in the case was whether

- 17 -

the parties subscribing to the respective contract provisions had thereby waived the *Kotecki* limit.

First, "Paragraph 7" stated,

> The Subcontractor agrees to assume entire responsibility and liability, to the
> fullest extent permitted by law, for all damages or injury to all persons, whether
> employees or otherwise, and to all property, arising out of it, resulting from or in
> any manner connected with, the execution of the work provided for in this
> Subcontractor [sic] . . . and the Subcontractor, to the fullest extent permitted by
> law, agrees to indemnify and save harmless the Contractor . . . from all such
> claims including, without limiting the generality of the foregoing, claims for
> which the Contractor may be or may be claimed to be, liable and legal fees and
> disbursements paid or incurred to enforce the provisions of this paragraph.

*Id.* at 639, 357 Ill. App. 3d at 1003.

The second provision at issue, "Paragraph 11.11," contained two sub-paragraphs. One,

"Paragraph 11.11.1," stated that the subcontractor "shall indemnify and hold harmless" the other

contracting parties "from and against all claims, damages, losses, and expenses . . . to the extent

caused in whole or in party by any negligent act or omission of the Subcontractor." *Id.* at 639-40,

357 Ill. App. 3d at 1004. The second sub-paragraph, "Paragraph 11.11.2," stated,

> In any and all claims against the Owner, the Architect, or the Contractor or any of
> their agents or employees by any employee of the Subcontractor, anyone directly
> or indirectly employed by him or anyone for whose acts he may be liable, the
> indemnification obligation under this Paragraph 11.11 shall not be limited in any
> way by any limitation on the amount or type of damages, compensation or benefits
> payable by or for the Subcontractor under workers' or workmen's compensation
> acts, disability benefit acts or other employee benefit acts.

*Id.* at 640, 357 Ill. App. 3d at 1004.

The *Willis* court first discussed whether Paragraphs 11.11.1 and 11.11.2 waived the

*Kotecki* limit. The court identified the indemnity language of both paragraphs. It then pointed

out that Paragraph 11.11.2 stated that "the indemnification obligation . . . shall not be limited in

any way by any limitation on the amount or type of damages, compensation or benefits payable

- 18 -

by or for the Subcontractor under . . . workmen's compensation acts." *Id.* at 642, 357 Ill. App. 3d at 1007. The court found that this language explicitly waived the *Kotecki* limit. Turning to Paragraph 7, the court noted that Paragraph 7 did not have the "shall not be limited" language. *Id.* at 642, 357 Ill. App. 3d at 1007. ("The words 'shall not be limited' or other phrases purporting to indemnify either party for its own negligence, did not appear in that provision, as they did in the indemnification provisions of [Paragraphs 11.11.1 and 11.11.2].") The court then held that Paragraph 7 did not waive the *Kotecki* limit. *Id.* at 642, 357 Ill. App. 3d at 1007.

Wheaton cites *Willis* as a clarification of *Braye* and *Liccardi* and argues that *Willis* holds that "specific contractual language is needed to bring about a *Kotecki* waiver, while general, non-specific indemnity language, like the language of the agreement in the instant case, will not waive *Kotecki*." (Wheaton 56(b) Reply at 4.) Wheaton's argument has initial appeal, and its interpretation of *Willis* is intuitive. The problem, however, is that the language in *Braye* and *Liccardi* that did constitute a *Kotecki* waiver appears insignificantly different from the language in the Wheaton-Pulte contract (and, incidentally, Paragraph 7 in *Willis*). This Court, when applying state law as in the present case, attempts to predict how the state Supreme Court would rule on a given issue. *See, e.g.*, *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999) (citing *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997)). "Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Id.*

Here, although *Willis* appears to support Wheaton's argument, *Braye* and *Liccardi*–Illinois Supreme Court cases–do not. The contract provisions in *Braye* and *Liccardi* do

- 19 -

not contain the explicit "shall not be limited" language that Wheaton claims *Willis* mandates. Furthermore, Wheaton has presented the Court with no "persuasive indications" that the Illinois Supreme Court, if confronted with this issue again, would follow *Willis* over *Braye* and *Liccardi*, to the extent *Willis* differs. With this in mind, the Court is loathe to adopt and apply additional requirements for a *Kotecki* waiver that the Illinois Supreme Court has not yet adopted, additional requirements that as yet stand in contravention of established Illinois law. In light of this, the Court views *Willis* not as a clarification of this area of the law but as an anomaly, particularly since apparently the Illinois Supreme Court has not addressed this issue directly since *Liccardi*.

In following *Braye* and *Liccardi*, the Court holds that the language in the Wheaton-Pulte agreement is sufficient to waive the *Kotecki* limit. Because of this, Wheaton is potentially liable for the full share of its fault in Avalos's accident, and Wheaton's waiver of its IWCA lien does not call for a dismissal of Pulte's claims against Wheaton. For this reason, Wheaton is not entitled to judgment as a matter of law, and its motion for summary judgment is denied.

## III. Conclusion

For the foregoing reasons, Wheaton's Rule 12(c) motion for judgment on the pleadings is denied. The indemnity clause is not voided by the Anti-Indemnity Act, and Wheaton has not demonstrated that the pleadings show that it has fulfilled its contractual obligations under the insurance clause. Wheaton's motion for summary judgment is also denied. Under *Kotecki* and

its progeny, Wheaton's waiver of its IWCA lien does not entitle it to a dismissal of Pulte's contribution claim.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated:  December 22, 2006.