

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALMA AVALOS, Special Administrator of the Estate of Juan Avalos, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>PULTE HOME CORPORATION, a Foreign Corporation, and PULTE HOME INC., a Foreign Corporation,<br><br>Defendants/Third-Party Plaintiffs,<br><br>v.<br><br>F.E. WHEATON & CO., INC., and JOSE AVALOS, individually,<br><br>Third-Party Defendants. | Case No. 04 C 7092<br><br>Magistrate Judge<br>Martin C. Ashman |

### MEMORANDUM OPINION AND ORDER

This matter is before this Court on the motion of Pulte Home Corporation ("Pulte") for summary judgment under Federal Rule of Civil Procedure 56. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow, the Court denies Pulte's motion.

## I. Background

### A. The Accident

The facts material to this summary judgment motion are undisputed unless otherwise noted. On February 11, 2004, Plaintiff's decedent, Juan Avalos, sustained fatal injuries while delivering building materials to Auburn Lakes, a housing development in Plainfield, IL, developed by Pulte Home Corporation ("Pulte"). (Def.'s Mem. at 1-2.) Avalos was employed by F.E. Wheaton, Inc. ("Wheaton"), a company that delivers millwork and the like to construction projects. (*Id.*) Pulte had subcontracted with Wheaton for Wheaton to deliver various building supplies to the Auburn Lakes development. (Def.'s Mem. at 2.) On February 11, 2004, Juan Avalos and his brother Jose Avalos arrived at Auburn Lakes Lot 247 in order to deliver millwork and doors. (Def.'s Mem. at 2). Juan Avalos backed the truck onto the driveway of Lot 247, and after he turned off the engine he and Jose began to unload the truck. (Def.'s Mem. at 4.) After the brothers finished unloading the doors, Juan told Jose to back up the truck "a little bit" so the two could unload remaining supplies. (*Id.*) In the process of Jose's backing up the truck, Jose heard the truck hit the house, exited the truck to inspect the scene, and saw that Juan had sustained head injuries. (Def.'s Mem. at 5.) Juan subsequently died from these injuries. His wife, Alma Avalos ("Avalos"), then initiated this suit against Pulte, essentially claiming that Pulte's negligent actions caused Juan Avalos's death. (*See* Avalos Compl. *passim*; Def.'s Mem. at 1.)

### B. Subcontract and Specifications

As part of Pulte's hiring of Wheaton as a subcontractor, Wheaton executed a "Suppliers Contract Agreement" ("Subcontract"), which includes a set of "Scope of Work Specifications" ("Specifications"). (Def.'s Mem. at 2.) The Subcontract states,

> It is agreed that [Wheaton] shall deliver the materials only to the Contractor's designated representative at the job site (or other site as Contractor may reasonable [sic] designate in advance) and shall place the materials in a location on the job site as directed by the Contractors [sic] representative. [Wheaton] shall obtain [a] signed receipt from Contractor's representative for the delivery. . . . The delivery shall not interfere with any work in progress at the job site.

(Def.'s Mem. Ex. I., ¶ 1.) The Specifications state that "[Wheaton is] responsible to unload [its] own material." (Def.'s Mem. Ex. J, Part 5(D).) The Specifications also state the following rule: "NO PARKING BEYOND THE CURB AT ANYTIME ON SOIL, ASPHALT, STONE OR CONCRETE. A Pulte Representative will designate parking areas. . . . No vehicles are allowed on finished drives for any reason, even when performing service work." (Def.'s Mem. Ex. J, Part 4(S) (emphasis in original)). The Specifications also reiterate that "[a]ll deliveries will be placed in a designated area per a Pulte representative." (Def.'s Mem. Ex. J, Part 5(C)). The parties dispute whether the purpose of these rules regarding where Wheaton employees may park is merely avoiding driveway damage or whether a purpose of these rules could include ensuring safety.

### C. Summary Judgment

On July 7, 2006, Pulte filed this motion for summary judgment. In this motion, Pulte raises two arguments as to why it is entitled to summary judgment. Pulte argues first that Pulte

- 3 -

did not retain sufficient control over Wheaton's work for Pulte to owe a duty of care toward Juan Avalos. (Def.'s Mem. at 6-9.) Second, Pulte argues that Pulte's conduct was not the proximate cause of Juan Avalos's injury and death. (Def.'s Mem. at 9-15.) In its Reply–in response to an argument Avalos raised in its Response–Pulte also argues that the driveway on which the Avalos brothers parked did not contain an unnatural accumulation of ice. (Def.'s Reply at 8-11.) For the reasons that follow, the Court denies Pulte's motion for summary judgment.

## II. Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the Court "considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion." *Aguirre v. Turner Constr. Co.*, 05 C 515, 2006 WL 644009, at *2 (N.D. Ill. Mar. 9, 2006) (citing *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000)). A genuine issue of material fact is present where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The subject matter jurisdiction in this case is based on diversity, so the Court applies the substantive law of Illinois in deciding whether a genuine issue of material fact exists and, if not, whether Pulte is entitled to judgment as a matter of law. *See, e.g., Devitt v. Ryerson Tull, Inc.*,

05-2308, 2006 WL 1120528, at *3 (N.D. Ill. Apr. 25, 2006) (citing *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000)).

## A. Control

Avalos alleges that Pulte's negligence caused Juan Avalos's injury and death. In Illinois, a party alleging negligence must show that the defendant owed the plaintiff a duty of care, that the defendant breached this duty, and that the breach proximately caused the plaintiff's injury. *Wojdyla v. City of Park Ridge*, 148 Ill.2d 417, 421, 592 N.E.2d 1098, 1100 (1992). In Illinois, the question of whether a duty exists is a question of law for the Court to decide. *Martens v. MCL Constr. Corp.*, 347 Ill. App. 3d 303, 315, 807 N.E.2d 480, 489 (App. Ct. 2004); *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 837, 719 N.E.2d 174, 176 (App. Ct. 1999). Typically, this duty arises where the parties stand in a special relationship to each other. *Cochran v. George Sollitt Constr.*, 358 Ill. App. 3d 865, 873, 832 N.E.2d 355, 361 (App. Ct. 2005). Generally, this relationship is not present where a party hires an independent contractor, meaning that a general contractor generally does not owe a duty of care toward its subcontractor's employees. *See Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill.2d 19, 276 N.E.2d 336 (1971). Illinois has adopted section 414 of the Restatement (Second) of Torts, which provides an exception to this general rule and which states as follows:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965). Section 414's application is clarified by comment (c) to section 414:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414, cmt. c (1965).

Thus, the question in this case becomes whether Pulte has retained enough control over Wheaton's duties in order to trigger a duty under section 414. As comment (c) makes clear–as does surrounding case law–the level of control required in order to trigger section 414 is significant. *See, e.g., Rangel*, 307 Ill. App. 3d at 389, 719 N.E.2d at 177 (specifying that the general contractor must do more than control the ends, but must control the means–the "operative details"–the subcontractor employs in reaching the ends). Pulte argues that it did not retain control over Wheaton's activities in performing its obligations under the Subcontract, and that Pulte thus did not owe a duty to Wheaton's employees, including Avalos. (Def.'s Mem. at 6.) Accordingly, Pulte argues that it is entitled to summary judgment on Avalos's negligence claims. (Def.'s Mem. at 6-9.)

The Court finds that Pulte owed a duty to Avalos, which precludes summary judgment. The Court follows the approach used in *Downs v. Steel & Craft Builders, Inc.*, in analyzing this case: first, the Court looks to the Subcontract to determine whether Wheaton and Pulte intended Pulte to retain enough control to trigger section 414; second, the Court considers the parties'

actual practice and whether Pulte in fact exerted control sufficient to trigger section 414. *See Downs v. Steel & Craft Builders, Inc.*, 358 Ill. App. 3d 201, 205-08, 831 N.E.2d 92, 98-100 (App. Ct. 2005); *see also Moss v. Rowe Constr. Co.*, 344 Ill. App. 3d 772, 779, 801 N.E.2d 612, 617 (App. Ct. 2003) (employing this framework, and purporting to follow prior case law in so doing) (citing *Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill. App. 3d 1051, 728 N.E.2d 726 (App. Ct. 2000)).

Following the framework used in *Downs*, this Court finds that Pulte has retained sufficient control over Wheaton's activities to impose a duty on Pulte toward Juan Avalos under section 414. First, the Court looks to the parties' agreements–the Wheaton-Pulte Subcontract and the Specifications. Both are quoted above. The Subcontract states that Wheaton will deliver the materials only to a Pulte representative and only in the manner that the Pulte representative directs. (Def.'s Mem. Ex. I, ¶ 1.) The Specifications ordered Wheaton to refrain from parking "beyond the curb" on driveways and the like. (Def.'s Mem. Ex. J, Part 4(S).) The Specifications also echo the Subcontract in directing Wheaton to follow the specific directions of a Pulte representative when unloading the delivered supplies. (*See* Def.'s Mem. Ex. J, Part 5(C).)

The Specifications and the Subcontract explicitly identify the place where Wheaton may park–i.e., not on the driveway. In the context of delivery of millwork to a home building project, this direction is particular and significant. It does more than control the ends of Wheaton's work, but it also controls the means Wheaton employs in reaching those ends. In addition, the instruction in the Specifications and Subcontract that Wheaton must deliver *only* according to the directions given by a Pulte representative leaves Pulte with a great deal of potential control over how Wheaton executes its deliveries. The parties' agreement reserves for Pulte the right to

dictate the particulars through the use of a representative, which indicates that under the agreement Wheaton was not free to do the delivery work as it deems best. This demonstrates that the parties intended for Pulte to control the manner in which Wheaton does its work.

This conclusion is bolstered by the control Pulte actually exerted over Wheaton. Pulte argues that "Pulte issued no rules or instructions with regard to the specific methods and means that F.E. Wheaton deliverymen were to employ in physically accomplishing their deliveries." (Def.'s Reply at 2.) Pulte also states that "[t]he details related to the manner in which the deliveries were to be made [were] left *entirely* to the judgment and expertise of the F.E. Wheaton supervisors and personnel." (Def.'s Reply at 3 (emphasis in original).) In these statements, Pulte appears to argue that, in contravention of any contractual provision leaving control over the means and methods of Wheaton's work to a Pulte representative, Pulte in fact did not exercise any operative control over Wheaton's employees' work. More specifically, no Pulte representative was present when Wheaton made its deliveries. In support of its argument, Pulte refers to a "preconstruction meeting," in which Wheaton and the other suppliers and tradespeople "set out the overall procedures that would govern the project." (*Id.*) These procedures "permitted [Wheaton] to leave materials in garages of homes under construction without any Pulte employee being present." (*Id.*)

The absence of a Pulte representative to instruct Wheaton's delivery does not support Pulte. The context of the preconstruction meeting indicates that the specifics of Wheaton's deliveries–the "operative details"–were fleshed out at this meeting. A Pulte vice-president has stated as much: "The practice is [for Wheaton] to deliver it to the designated spot that we have communicated to them, but a representative is not going to be available–there will not be a Pulte

- 8 -

representative there to receive the millwork." (Geunther Dep. at 77-78.) Instead of showing less control, this statement shows that at the preconstruction meeting Pulte retained actual control over the "designated spot that we have communicated to them." (*Id.*) This reinforces the Court's finding that Wheaton is not free to perform its work in the manner in which it sees fit.

Avalos relies on cases like *Moorehead v. Mustang Construction Co.* for the proposition that, where a general contractor retains control over the safety at the construction site, summary judgment is not appropriate. (Pl.'s Resp. at 4 (citing *Moorehead*, 354 Ill. App. 3d 456, 821 N.E.2d 358 (App. Ct. 2004); *Moss*, 344 Ill. App. 3d 772, 801 N.E.2d 612; *Bokodi*, 312 Ill. App. 3d 1051, 728 N.E.2d 726.) Regarding the interplay of the enforcement of safety regulations and retained control under section 414, the court in *Cochran* clarified the issue as follows:

> The party who retains control is the logical party upon whom to impose a duty to ensure worker safety. Penalizing a general contractor's efforts to promote safety and coordinate a general safety program among various independent contractors at a large jobsite hardly serves to advance the goal of work site safety. A party who retains some control over the safety of the work has a duty to exercise that control with ordinary care. Nevertheless, the existence of a safety program, safety manual or safety director does not constitute retained control *per se*; the court must still conduct an analysis pursuant to the section 414 retained control exception. We recognize, of course, that if a defendant's safety program sufficiently affected a contractor's means and methods of doing its work, then such program could bring the defendant within the ambit of the retained control exception.

*Cochran*, 358 Ill. App. 3d 876, 832 N.E.2d at 363 (citations omitted).

In this case, the Specifications do not contain a "specific mandate for [Pulte's enforcement of] safety contained in the contracts." *Moss*, 344 Ill. App. 3d at 783, 801 N.E.2d at 620. The Specifications at most impose a shared duty on Pulte to enforce the safety regulations. The Specifications list several pages of general and specific safety instructions, some of which

specify that Wheaton is responsible for their implementation. (*See generally* Def.'s Mem. Ex. J, Part 5.) None of the specific safety instructions indicate explicitly that Pulte alone is responsible for their implementation.

However, the safety instructions do suggest that Pulte has retained some control. Avalos also argues that "[a]ll of the Pulte superintendents had responsibility at Auburn Lakes to implement and enforce any safety rules that may have been in place there." (Pl.'s Resp. to Def.'s 56.1 Statement of Material Facts, ¶ 28.) Avalos suggests that Pulte's control includes requiring Wheaton employees to wear hard hats. (Pl.'s Mem. at 4-5.) This control over safety–the shared responsibility for safety and the hard hat requirement–is not significant enough by itself to impose a duty on Pulte under section 414.

Notwithstanding the Court's finding that Pulte's control over safety does not itself impose a duty on Pulte under section 414, the Court finds that Pulte owes a duty to Avalos. The Court has not been shown that a factual question exists as to the level of control Pulte retained. *Cf. Martens*, 347 Ill. App. 3d at 320, 807 N.E.2d at 493 ("Because the evidence here fails to indicate sufficient control by defendants over Ketler's or plaintiff's work under the retained control exception of section 414, plaintiff fails to raise a factual question necessary to survive summary judgment.") For this reason, the Court must deny Pulte's motion for summary judgment.

### B. Causation

In addition to arguing that it owed no duty to Juan Avalos, Pulte argues that it is entitled to summary judgment because its conduct was not the proximate cause of Juan Avalos's death.

(Def.'s Mem. at 9-15.) In Illinois, to recover damages for negligence, in addition to proving the existence of a duty and the breach of that duty, the plaintiff must prove that the negligent conduct proximately caused the plaintiff's injuries. *First Springfield Bank & Trust v. Galman*, 188 Ill.2d 252, 256, 720 N.E.2d 1068, 1071 (1999). The Illinois Supreme Court has held that the proximate cause concept encompasses two distinct requirements: cause in fact and legal cause. *Id.* at 257-58, 720 N.E.2d at 1072. Negligent conduct is a cause in fact if it "is a material element and a substantial factor in bringing about the injury." *Id.* at 258, 720 N.E.2d at 1072. "[C]onduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred." *Id.* at 258, 720 N.E.2d at 1072. In other words, causation in fact can be colloquially described as "but for" causation: but for the negligent conduct, the injury would not have occurred. The Illinois Supreme Court has defined legal cause in terms of foreseeability: "The relevant inquiry here is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.* at 258, 720 N.E.2d at 1072. "Although proximate cause is generally a question of fact, the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." *Young v. Bryco Arms*, 213 Ill.2d 433, 447, 821 N.E.2d 1078, 1086 (2004) (citations omitted).

The issue in the present motion is whether Pulte's conduct was a legal cause of Juan Avalos's injuries. Pulte argues that its conduct was not a legal cause because several Wheaton employees' acts were intervening causes of Juan Avalos's injury. The question whether the injury was caused by some intervening cause is encompassed in the foreseeability analysis of whether legal cause exists. "Where there is an intervening act by a third person, the test we apply is

whether the first wrongdoer reasonably might have anticipated the intervening cause as a natural and probable result of the first party's own negligence." *Jinkins v. Evangelical Hosps. Corp.*, 336 Ill. App. 3d 377, 382, 783 N.E.2d 123, 127 (App. Ct. 2002) (citing *First Springfield Bank & Trust*, 188 Ill.2d at 257, 720 N.E.2d at 1071-72). Illinois courts have framed the issue as whether the acts of the defendant are a cause of the plaintiff's injury, or whether the defendant's acts merely "furnish a condition by which the injury is made possible" via the "subsequent independent act of a third person," the latter not constituting legal cause. *First Springfield Bank & Trust*, 188 Ill.2d at 257, 720 N.E.2d at 1071. However, at the heart of this analysis is in all events whether the intervening cause is foreseeable to the defendant. This is the case even if the intervening act is criminal. *See id.* at 257, 720 N.E.2d at 1071; *Mack v. Ford Motor Co.*, 283 Ill. App. 3d 52, 60, 669 N.E.2d 608, 615 (App. Ct. 1996) (considering as a possible intervening cause, "whether either or both [third-party drivers] were driving too fast for conditions and whether each should have avoided colliding with the other vehicle," and stating that "the law is clear that conduct does not become an unforeseeable intervening cause solely because it violates the law" (citations omitted)).

Pulte alleges that Juan and Jose Avalos were affirmatively negligent in performing their work, and that this negligence was an intervening cause of the accident. (Def.'s Mem. at 11.) Pulte bases its argument that the Avalos brothers were negligent on the facts that they parked the truck on the driveway and operated the truck in an unsafe manner (particularly by Juan Avalos's "improperly position[ing] himself behind the vehicle to direct [Jose]," and by Jose Avalos's "unsafely back[ing] up the truck so it impacted into the garage and pinned the decedent"). (Def.'s Mem. at 11-12.) A fact finder could determine that these acts by the Avalos brothers were

foreseeable–Pulte might reasonably have anticipated the Avalos brothers parking on the driveway in the manner in which they did. Wheaton's obligations under the contract included unloading building materials. Foreseeable acts toward fulfilling this obligation, even if negligent, include driving onto the driveway to unload the materials close to the house in derogation of protocol and directing the truck while standing behind it (even in an unsafe manner). With this in mind, an argument exists that the Avalos brothers' conduct was foreseeable, in which case their conduct would not be not an intervening cause and Pulte would remain liable. This question of fact precludes the Court from granting Pulte's motion for summary judgment.

Pulte intermingles another argument with its argument that the Avalos brothers' negligence was an intervening cause. Pulte suggests that the Avalos brothers–particularly Jose Avalos–violated the Illinois Vehicle Code, which caused Juan Avalos's injury. (Def.'s Mem. at 11-14.) Pulte argues that Jose Avalos violated the Illinois Vehicle Code by operating the truck on the Auburn Lakes driveway without a driver's license or a commercial driver's license, and that this violation is an intervening cause that prevents Pulte's conduct from being a legal cause of Juan Avalos's injury and death.[2] (Def.'s Mem. at 14.) Pulte cites several cases that it argues stand for the proposition that "when a driver of a vehicle does not control their [sic] vehicle or follow the rules of the road, any of the other surrounding conditions will not be a proximate cause of the occurrence." (Def.'s Mem. at 12 (emphasis in original).) For example, Pulte cites *Novander v. City of Morris*, where a third-party driver swerved into the opposing lane to avoid potholes, thus striking the plaintiff's decedent. 181 Ill. App. 3d 1076, 537 N.E.2d 1146 (App. Ct.

---

[2]Avalos has denied some of the particulars regarding whether Jose Avalos has no license, suggesting instead that Jose Avalos has "more of a permit" from Mexico. (Pl.'s Resp. to Def.'s 56.1 Statement of Material Facts, ¶ 17.)

1989). Pulte also cites *Estate of Joseph Elfayer v. City of Chicago*, where a third party was driving drunk, swerved into the plaintiff's decedent's lane, and killed the plaintiff's decedent. 325 Ill. App. 3d 1076, 757 N.E.2d 581 (App. Ct. 2001). In both of these cases, and in the others that Pulte cites, the court found that the defendant-driver's disregard of traffic laws was an intervening cause, negating the legal cause element and removing the defendant's liability.

This situation is different than the situation in each of the cited cases. In the cases Pulte cites, the third party's conduct actually caused—was a cause in fact—of the plaintiff's injury. Here, however, the fact that Jose Avalos did or did not have the proper license did not play a role in causing Juan Avalos's injury and death. The accident would have occurred even if Jose Avalos had the proper licensing. On the facts alleged, Jose Avalos's violation of the Illinois Vehicle Code is not a "but for" cause of the accident, and as such it cannot be an intervening cause. Because the facts alleged do not support a finding that Jose Avalos's violation of the Illinois Vehicle Code is an intervening cause, the Court determines as a matter of law that Jose Avalos's driving without a proper license is not an intervening cause.

A fact question exists as to whether the Avalos brothers' negligent acts were foreseeable, and Jose Avalos's driving without a license is not a cause of Juan Avalos's death and injury. Therefore, the Court denies summary judgment on this issue.

### C. Snow and Ice

In her Response, Avalos argues that Pulte, as owner of the property on which the accident occurred, is liable to Avalos because an "unnatural accumulation of ice and snow" was present on the driveway and caused injury to Juan Avalos. (Pl.'s Resp. at 8.) Avalos points out that Jose

Avalos testified that, when he braked while backing the truck, the truck "did not stop and slid into the house." (Pl.'s Resp. at 8-9.) Pulte disputes the accuracy of Jose Avalos's testimony, but it admits that Kenneth Ruggles, a police officer who investigated the accident, noted patches of ice or compacted snow "in proximity to the wheels [of the truck]." (Def.'s 56.1 Statement of Material Facts, ¶ 38.) Avalos also attaches to its Response four photographs of the partially ice-covered driveway. Avalos suggests that the ice patches "appeared to have been there for some time and there were spots on the driveway that had no snow and ice." (Pl.'s Resp. at 9.)

Under Illinois law, a landowner does not have a duty to remove natural accumulations of snow and ice, but the landowner who voluntarily removes snow or ice negligently may be subject to liability. *Graf v. St. Luke's Evangelical Lutheran Church*, 253 Ill. App. 3d 588, 591, 625 N.E.2d 851, 854 (App. Ct. 1993). While simply removing snow "leaving a natural ice formation underneath does not constitute negligence," snow that accumulates "by artificial causes or in an unnatural way, or by the defendant's use of the premises" may subject the landowner to liability. *Id.* at 591-92, 625 N.E.2d at 854 (citations omitted). Thus, the issue for this motion for summary judgment is whether a fact issue exists as to whether the ice that remained on the driveway was a natural accumulation, or whether the ice was an unnatural accumulation that potentially would subject Pulte to liability.

The Court holds that a fact issue exists as to whether the ice patches on the driveway are natural or unnatural accumulations. The photographs that Avalos attaches show the patches of ice, and parts of the driveway are dry. A trier of fact could conclude that this demonstrates that the ice patches, which Officer Ruggles surmised aligned with the wheels of the truck, are the result of snow that Avalos negligently cleared. *See id.* at 592, 625 N.E.2d at 855 ("Plaintiff

testified that the snow had been removed from one side of the stairs and thrown over the handrail onto the other side. A jury could thus conclude that the ice on which the plaintiff fell was caused by runoff from the snow piled on the other side of the stairs."). Pulte cites several cases finding no unnatural accumulation where puddles result from tracked-in snow or from rain water. (*See* Def.'s Reply at 9-11.) The Court finds this situation more analogous to cases involving cleared snow rather than standing water. Thus, the Court denies Pulte's motion for summary judgment because a fact issue remains as to whether the ice on the driveway constitutes an unnatural accumulation.

### III. Conclusion

For the foregoing reasons, the Court denies Pulte's motion for summary judgment. Pulte retained enough control over Wheaton's work to owe a duty to Juan Avalos. Avalos has also alleged facts sufficient to demonstrate that Pulte's conduct is a proximate cause of the accident that killed Juan Avalos. A fact question remains as to whether the ice on the driveway was an unnatural accumulation. For these reasons, the Court denies Pulte's motion for summary judgment.

**ENTER ORDER:**

_____
MARTIN C. ASHMAN
United States Magistrate Judge

Dated: January 31, 2007.

Copies have been mailed to:

| | |
|---|---|
| STEPHEN M. PASSEN, Esq.<br>Stephen M. Passen, Ltd.<br>One East Wacker Drive<br>Suite 2406<br>Chicago, IL 60601 | KATE BRIAND, Esq.<br>Belgrade & O'Donnell<br>20 North Wacker Drive<br>Suite 1900<br>Chicago, IL 60606<br><br>HOWARD TRAFMAN, Esq.<br>Meachum Spahr & Trafman<br>10 South LaSalle Street<br>Suite 2800<br>Chicago, IL 60603 |
| Attorney for Plaintiff | Attorneys for Defendants |